UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| XCESS LIMITED, | Case No. C25-507RSL |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S MOTION TO COMPEL |
| AMAZON.COM SERVICES, LLC, | |
| Defendant. | |

This matter comes before the Court on plaintiff's motion to compel production of documents (Dkt. # 45), defendant's response (Dkt. # 50), and plaintiff's reply (Dkt. # 53). Having reviewed these motions, the related declarations (Dkts. # 46, # 51), and the record herein, the Court hereby GRANTS IN PART and DENIES IN PART defendant's motion to compel.[1]

---

[1] On January 9, 2026, plaintiff filed a "Statement of Additional Facts in Support of its Motion to Compel." Dkt. # 71. Defendant then filed a response arguing, among other things, that plaintiff's statement violated the Local Civil Rules. Dkt. # 72 at 2:1. The Court did not rely on either of these submissions in reaching its decision on plaintiff's motion to compel, given that neither submission made arguments relevant to the issues the Court considered here (i.e., relevance and undue burden under Fed. R. Civ. P. 26(b)(1)).

ORDER ON PLAINTIFF'S
MOTION TO COMPEL - 1

## I.    Background

Plaintiff Xcess Limited is a liquidator that contracted with defendant Amazon.com Services, LLC, to remove "[s]low-selling, non-selling or returned products warehoused at Amazon fulfillment centers" in order to create more space "that could be used to warehouse faster-selling products." Dkts. # 1 at ¶ 2, # 50 at 3. Plaintiff alleges that "[i]n or about 2020," Amazon "decided" to require liquidators to also purchase third-party seller products housed at Amazon's warehouses. Dkt. # 1 at ¶ 3. In the context of this case, third-party sellers are known as "Fulfillment by Amazon" ("FBA") sellers. *Id*. at ¶ 1.

Plaintiff alleges that "unscrupulous FBA Sellers" learned that "they could profit by charging exorbitant prices for inexpensive and/or shoddy goods because Amazon's liquidation algorithm resulted in them receiving payments well in excess of their costs of goods sold." *Id*. at ¶ 4. Plaintiff alleges that Amazon was aware of this problem, but did not take proactive steps to resolve it because "Amazon benefitted financially" in that Amazon "charged its liquidators the full amount Amazon owed to FBA Sellers for the liquidated products plus the amount the FBA Sellers owed Amazon for liquidating the products on the FBA Sellers' behalf." *Id*. at ¶ 5. In other words, plaintiff alleges that Amazon was attempting to "pass through charges" to liquidators like plaintiff, "with the promise to refund payments if and when Xcess ferreted out the fraud." *Id*. at ¶ 8.

Plaintiff alleges that it began to "short pay invoices" from Amazon, with Amazon's permission, based on plaintiff's pending credit requests for charges from Amazon related to the FBA seller fraud. *Id*. "In 2024, Amazon Services decided to force Xcess, and presumably its

ORDER ON PLAINTIFF'S
MOTION TO COMPEL - 2

other existing liquidators, to fully absorb the losses from the rampant FBA fraud." *Id*. at ¶ 9. "In addition," Amazon "demanded Xcess repay the amounts withheld based on still pending credit requests." *Id*. Then, on July 30, 2024, "Amazon Services sent Xcess a Notice of Termination of Liquidation Agreement." Dkts. # 1 at ¶ 39, # 50 at 3. This lawsuit followed, with plaintiff asserting claims for breach of contract, declaratory judgment, violation of the Washington State Consumer Protection Act, tortious interference with a prospective business relationship, and defamation. Dkt. # 1 at ¶¶ 54–83.

On Feb. 11, 2026, the Court denied defendant's motion for a protective order that would have effectively stayed plaintiff's discovery of Electronically Stored Information ("ESI") until after a ruling from this Court on defendant's pending motion to dismiss. Dkt. # 73. In addition, in August 2025 the parties reached agreement regarding (1) a protective order governing confidentiality and (2) the discovery of ESI. Dkts. # 68, 69. As a result, the briefing on plaintiff's motion to compel contains a significant number of arguments that have been mooted by these intervening events. Dkts. # 45, 50, 53. What remains of the present motion to compel is the parties' disagreement over whether plaintiff's "First Set of Requests for Production of Documents," Dkt. # 46 at 6–32, contains requests for documents that defendant should not be compelled to produce because those document requests are irrelevant and / or unduly burdensome. Dkts. # 45, 50, 53.

## II.    Discussion

Under Fed. R. Civ. P. 26(b)(1),

ORDER ON PLAINTIFF'S
MOTION TO COMPEL - 3

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

"This Rule favors broad discovery." *Lauer v. Longevity Med. Clinic PLLC*, No. C13-0860-JCC, 2014 WL 5471983, at *3 (W.D. Wash. Oct. 29, 2014). "Litigants 'may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.'" *Id*. (quoting *Surfvivor Media, Inc. v. Survivor Prods.,* 406 F.3d 625, 635 (9th Cir.2005)). "Relevant information for purposes of discovery is information reasonably calculated to lead to the discovery of admissible evidence." *Id.* A discovery request should be considered relevant "if there is any possibility that the information sought may be relevant to the subject matter of this action." *Id*. (quoting *Ragge v. MCA/Universal Studios, Inc.,* 165 F.R.D. 601, 604 (C.D.Cal.1995)). Put another way, under the concept of relevancy discovery should not ordinarily be disallowed "unless it is clear that the information sought can have no possible bearing upon the subject matter of this action." *Id*.

### 1. "All Documents" Requests

Here, defendant objects to "multiple requests" that it claims "seek to pry into Amazon's relationships with the numerous independent businesses that sell products through Amazon's FBA program, with no tethering whatsoever to Xcess or its contract

ORDER ON PLAINTIFF'S
MOTION TO COMPEL - 4

with Amazon." Dkt. # 50 at 11:1–4. As examples, defendant cites plaintiff's request for "all documents" relating to:

- "the decision to add Liquidation Merchandise of ["Fulfillment by Amazon" ("FBA")] Sellers to Liquidation Agreements" (RFP 2) . . . ;

- "algorithms or formulas that You or Amazon use or have used to calculate . . . the amount You or Amazon pay to FBA Sellers when selling FBA Sellers' Liquidation Merchandise to a Liquidator" (RFP 6) . . . ;

- "any FBA Sellers' . . . setting prices for their products in excess of the value of, or FBA Sellers' cost of goods sold for, those products" (RFP 7) . . . ; and

- "any allegations or investigations that any FBA Seller was engaging in fraud or other conduct designed to obtain payments from You or Amazon on account of Your or Amazon's selling that FBA Seller's Liquidation Merchandise to a Liquidator" (RFP 8) . . . .

*Id.*

As to RFP 2, plaintiff argues that a large part of the overcharging alleged in this case traces to Amazon's decision to "demand" that Xcess amend their "2019 Liquidation Agreement" to require Xcess to "liquidate certain FBA Sellers' products." Dkt. # 53 at 5. *See also* Dkt. # 1 at ¶¶ 5, 8, 9, 21. Thus, plaintiff argues, the decision by Amazon to "add Liquidation Merchandise of FBA Sellers to Liquidation Agreements" is relevant.

As to RFP 6, plaintiff argues that documents related to pricing algorithms that calculated the amount Amazon paid to FBA sellers for liquidation merchandise is relevant because these documents will "allow Xcess to understand how the inflated prices were set, which is directly related to Xcess' complaint and damages." Dkt. # 53 at 5.

ORDER ON PLAINTIFF'S
MOTION TO COMPEL - 5

As to RFP 7 and 8, plaintiff argues that "documents related to allegations of FBA Sellers setting prices in excess of their cost of goods sold or engaging in fraud to obtain payments from Amazon will demonstrate Xcess' claim that it was overcharged for Liquidation Merchandise." *Id*.

Defendant's objections to these requests, Dkt. # 50 at 11:1–4, are generally not persuasive given that Rule 26 "favors broad discovery," *Lauer*, No. C13-0860-JCC, 2014 WL 5471983, at *3 (W.D. Wash. Oct. 29, 2014), and given that (1) hundreds of millions of dollars are alleged to be at stake in this matter, (2) Amazon is a well-resourced company with superior access (and likely sole access) to the information plaintiff is seeking, and (3) the information plaintiff is seeking appears relevant to resolving the claims alleged.

However, the Court takes defendant's point that RFP 7, which seeks all documents and communications concerning FBA sellers "setting prices for their products in excess of the value of, or FBA Sellers' cost of goods sold for, those products," Dkt. # 46 at 14, "could conceivably relate to almost any pricing communications, as businesses generally set prices in excess of a product's cost or value," Dkt. # 50 at 11:14–17. The Court directs the parties to meet and confer in order to reach an agreement on how to provide plaintiff with information on this issue that is relevant to the allegations in plaintiff's complaint (which, on this point, variously uses phrases like "well in excess of their costs of goods sold," "well in excess of their products [sic] value," "in excess of what they are worth," and so on). Dkt. # 1 at ¶¶ 4, 28, 31. It appears to the Court that information about FBA

ORDER ON PLAINTIFF'S
MOTION TO COMPEL - 6

sellers setting prices well in excess of the goods' actual retail value would be most relevant to the allegations here.

To the extent defendant has objections to other "all documents" requests that it did not cite as examples in its response to the motion to compel, Dkt. # 50 at 11:1–4, the parties shall apply the above analysis to those requests.

### 2. "Financial Information" Requests

Defendant objects that plaintiff "seeks financial information relating to Amazon's relationships with these multitudes of independent FBA sellers," Dkt. # 50 at 11:24–12:4, including:

- the amounts "paid to FBA Sellers on account of selling FBA Sellers' Liquidation Merchandise to Liquidators each month of [various years]" (RFP 22); and

- the amount of "revenue You or Amazon recognized on account of Fulfillment by Amazon each month of [various years]" (RFP 23).

*Id.*

As to RFP 22 and 23, plaintiff argues that this financial information is "relevant to Xcess' claim that it was systematically overcharged for merchandise it received," and that the financial information will provide plaintiff with evidence as to "whether Amazon shielded itself from the negative effects of any FBA Seller fraud by passing these costs on to liquidators." Dkt. # 53 at 5:21–6: 11.

Defendant does not offer a specific argument as to why the financial information requested in RFP 22 and 23 is not relevant. Dkt. # 50 at 11:24–12:4. The Court finds that payments from Amazon to FBA sellers on account of their products being liquidated, and

ORDER ON PLAINTIFF'S
MOTION TO COMPEL - 7

revenues Amazon recognized on account of Fulfillment by Amazon, are relevant to plaintiff's theory that Amazon "benefitted financially" from the way it handled FBA seller fraud. Dkt. # 1 at ¶ 5. Therefore, defendant's objections to these requests are not persuasive. Fed. R. Civ. P. 26(b)(1); *Lauer*, No. C13-0860-JCC, 2014 WL 5471983, at *3 (W.D. Wash. Oct. 29, 2014).

To the extent defendant has objections to other "financial information" requests that it did not cite as examples in its response to the motion to compel, Dkt. # 50 at 11:24–12:4, the parties shall apply the above analysis to those requests.

### 3. Agreement, Dispute, and Overcharge Communication Requests

Defendant objects that in other RFPs, plaintiff is attempting to "snoop into Amazon's relationships with Xcess's competitors in the liquidation industry," "harass Amazon and its business partners," and "reveal competitively useful information for Xcess." Dkt. # 50 at 12:6–20. Specifically, defendant claims:

- Another request seeks "All form agreements that You or Amazon used when negotiating *any* agreement with FBA Sellers" (RFP 25) (emphasis added), regardless of whether the form agreement or FBA Seller has anything to do with Xcess.

- And Xcess also seeks to snoop into Amazon's relationships with Xcess's competitors in the liquidation industry, requesting "All Documents" about:

  - "*any* Liquidator's disputes of invoices relating to . . . overcharges for Liquidation Merchandise of FBA Sellers" (RFP 11);

  - "any Communications with Liquidators about . . . overcharges for FBA Sellers' Liquidation Merchandise" (RFP 9);

  - "[Amazon's] termination of *any* Liquidation Agreement for cause" (RFP 26).

ORDER ON PLAINTIFF'S
MOTION TO COMPEL - 8

*Id.*

Regarding RFPs 9, 11, 25, and 26, Plaintiff argues in response:

These Requests call for documents related to Amazon's performance of liquidation agreements similar to the agreement signed with Xcess and will shed light on Amazon's business practices, including the existence or prevalence of overcharging for Liquidation Merchandise.

The existence of disputes for invoices related to overcharges for Liquidation Merchandise makes it more likely that liquidation pricing was erroneous, a core claim of Xcess' Complaint. *See* Compl. [Dkt. 1] ¶¶ 5, 24, 25 & 27. Similarly, communications related to overcharges for FBA Sellers' Liquidation Merchandise are related to erroneous pricing. *Id.* Finally, documents related to Amazon terminating other liquidation agreements will shed light on the circumstances leading to the termination, which will likely relate to liquidation pricing. As such and in each instance, Xcess' Requests are targeted towards overcharging for Liquidated Merchandise.

Dkt. # 53 at 6:9–19. Plaintiff's arguments are persuasive given that plaintiff is bringing a claim under the Washington Consumer Protection Act, which requires plaintiff to establish, among other things, an "unfair or deceptive act or practice." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778 (1986). Because RFPs 9, 11, 25, and 26 have the potential to show that Amazon's alleged conduct was (or was not) a practice, those RFPs are seeking relevant information.[2] Fed. R. Civ. P. 26(b)(1); *Lauer*, No. C13-0860-JCC, 2014 WL 5471983, at *3 (W.D. Wash. Oct. 29, 2014). Further, the cases cited by defendant on this point are distinguishable. In *Lundquist v. First Nat'l Ins. Co. of Am.*, No. 18-5301 RJB, 2019 WL 6173360 (W.D. Wash. Nov. 20, 2019), which also involved a CPA claim, the issue was that plaintiffs were seeking to compel First

---

[2] The information sought by RFP 25 may also be relevant to the "public interest" aspect of a CPA claim. *Hangman Ridge*, 105 Wash.2d 778, 790 (1986).

ORDER ON PLAINTIFF'S
MOTION TO COMPEL - 9

National Insurance Company of America to make disclosures "regarding regulatory action, customer complaints, lawsuits and adjusting practices *in other states*." *Id*. (emphasis added). Here, there is no argument by Amazon that the practices alleged by plaintiff occurred in other states or under the legal or regulatory schemes of other states. Dkt. # 50. In *WATM LLC v. Payment All. Int'l, Inc.*, No. 2:24-CV-00405-JHC, 2025 WL 1736609, at *1 (W.D. Wash. June 23, 2025), also cited by defendant on this point, the causes of action were conversion, unjust enrichment, and accounting. The claims here are different: breach of contract, declaratory judgment, violation of the Washington State Consumer Protection Act, tortious interference with a prospective business relationship, and defamation. *Id*. *See also* Dkt. # 1 at ¶¶ 54–83. Further, while RFPs 9, 11, 25, and 26 do seek broad discovery, broad discovery is allowed and is proportional here given that (1) hundreds of millions of dollars are alleged to be at stake in this matter and (2) Amazon is a well-resourced company with superior access (and likely sole access) to the information plaintiff is seeking. Fed. R. Civ. P. 26(b)(1); *Lauer*, No. C13-0860-JCC, 2014 WL 5471983, at *3 (W.D. Wash. Oct. 29, 2014).

To the extent defendant has objections to other agreement, dispute, and overcharge information requests that it did not cite as examples in its response to the motion to compel, Dkt. # 50 at 11:24–12:4, the parties shall apply the above analysis to those requests.

### 4. Timeframe

Defendant argues that plaintiff "asks for documents from a nine-year period—January 1, 2016 to the present—even though Xcess's Complaint only contains allegations

ORDER ON PLAINTIFF'S
MOTION TO COMPEL - 10

regarding the 2019 Liquidation agreement and events thereafter." Dkt. # 50 at 4:16–19 (citing Dkt. # 51 at 14, ¶ 8). Plaintiff does not offer any argument as to why the time period covered by its requests should be January 1, 2016 to present "[u]nless otherwise stated." Dkts. # 45, # 51 at 14, ¶ 8, # 53. While plaintiff's complaint states that plaintiff entered into its first liquidation agreement with Amazon "[i]n or about 2016," Dkt. # 1 at ¶ 19, plaintiff also states that it was not required to liquidate products owned by FBA sellers until 2019, Dkt. # 1 at ¶¶ 3, 20, 21. Therefore, the Court agrees with defendant that the timeframe for plaintiff's RFPs should be limited to January 1, 2019 to present "[u]nless otherwise stated," with one exception. Plaintiff's RFP 2 seeks documents "relating to *the decision* to add Liquidation Merchandise of FBA Sellers to the Liquidation Agreements." Dkt. # 46 at 10 (emphasis added). For that RFP only, plaintiff's original timeframe—January 1, 2016 to present "[u]nless otherwise stated"— shall apply.

### III.    Conclusion

For all the foregoing reasons, plaintiff's motion to compel production of documents (Dkt. # 45) is GRANTED IN PART and DENIED IN PART as described above. Defendant shall supplement its discovery responses in keeping with this Order by March 30, 2026.

IT IS SO ORDERED.

DATED this 9th day of March, 2026.

ORDER ON PLAINTIFF'S
MOTION TO COMPEL - 11

Robert S. Lasnik
United States District Judge

ORDER ON PLAINTIFF'S
MOTION TO COMPEL - 12